04-15-00297-CV

ACCEPTED
04-15-00297-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/23/2015 11:13:31 AM
KEITH HOTTLE
CLERK

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

07/23/2015 11:13:31 AM

KEITH E. HOTTLE
Clerk

# Appendix 1

CAUSE NO. 11-04-15888-CV

| | | |
|---|---|---|
| HETUL BHAKTA, d/b/a BUDGET INN, *Plaintiff,* | § § § | IN THE DISTRICT COURT |
| v. | § § § § | 79TH JUDICIAL DISTRICT |
| TEXAS DEPARTMENT OF TRANSPORTATION and BALLENGER CONSTRUCTION COMPANY, INC. *Defendant.* | § § § § § | Of BROOK COUNTY, TEXAS |

FILED

2013 NOV 13 P 4: 33

JOE GUERRA, JR.
DIST. CLERK. BROOKS CO. TX

BY _____ DEPUTY

## ORDER GRANTING TEXAS DEPARTMENT OF TRANSPORTATION'S FIRST AMENDED PLEA TO THE JURISDICTION

On October 21, 2013, came on to be considered the Texas Department of Transportation's First Amended Plea to the Jurisdiction.

The Court is of the opinion that the First Amended Plea should be GRANTED.

IT IS THEREFORE ORDERED that Defendant Texas Department of Transportation's First Amended Plea to the Jurisdiction is hereby GRANTED.

SIGNED this __13__ day of __November__, 2013.

_____
JUDGE PRESIDING

# Appendix 2

Electronically Filed
3/6/2015 3:53:02 PM
Noe Guerra Jr., District Clerk
Brooks County, Texas
Reviewed By: Vanessa Martinez



AT 1:05 O'CLOCK FILED ⊙ M

MAR 9 2015

Noe Guerra, Jr. Dist. Clerk, Brooks Co. TX
By_____ Deputy

CAUSE NO. 11-04-15888-CV

| | | |
|---|---|---|
| HETUL BHAKTA d/b/a BUDGET INN, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| vs. | § § | 79th JUDICIAL DISTRICT |
| TEXAS DEPARTMENT OF TRANSPORTATION AND BALLENGER CONSTRUCTION COMPANY, INC. | § § § § § § | |
| Defendant. | § § | BROOKS COUNTY, TEXAS |

## AGREED FINAL JUDGMENT

On the 9 day of March, 2015 came on to be heard the above styled and numbered cause. Plaintiff, Hetul Bhakta d/b/a Budget Inn appeared by and through his attorney of record Aloysius Peter Thaddeus, Jr. Defendant, Ballenger Construction Company, Inc. ("Ballenger Construction") appeared by and through its attorney of record Steve Snelson. The parties announced they had resolved the disputed matters between them and have agreed on the entry of this judgment. The Texas Department of Transportation did not appear having already been dismissed by the court through an interlocutory Order. After considering the pleadings on file with the Court, the Court finds the following:

1. Pursuant to the agreement between the Plaintiff and Ballenger Construction the Court finds that Plaintiff sustained damages to Plaintiff's motel located in Falfurrias, Brooks County, Texas as a result of multiple flooding incidents arising out of the construction upgrade of U.S. Highway 281\Interstate Highway 69C. As part of the settlement the insurance carrier on behalf of Ballenger Construction agreed to pay for damages to the property that was not paid for through any payment by the Federal Emergency Management Agency ("FEMA"). Under the terms of the settlement agreement the Plaintiff and Ballenger Construction agreed to settle claims for the Plaintiff's alleged losses of: motel rental income; demolition labor costs; loss of furnishings for carpet, beds,

Agreed Final Judgment                                                                 Page 1

6

chairs, dressers and other motel furniture that were damaged result of the various flooding events.

2. Therefore, as a result of the settlement between Plaintiff and the payment that has been made on behalf of Ballenger Construction and received by Plaintiff, the Court hearby orders that Plaintiff take nothing from Ballenger Construction.

3. The Court also finds that Plaintiff brought claims of inverse condemnation, nuisance and negligence against the Texas Department of Transportation (TxDOT). Plaintiff alleged that three to four separate flooding events at his Falfurrias motel resulted from actions of the State of Texas acting through TxDOT during the highway reconstruction. Plaintiff further alleged that the manner in which TxDOT conducted the highway reconstruction caused the flooding events which shut down plaintiff's business for long periods of time. Plaintiff lastly alleged that these flooding events constituted a constitutional taking of real property in violation of the Texas State Constitution resulting in inverse condemnation by the State of Texas of the Plaintiffs property. The Court after considering the motion and arguments of counsel, and evidence admitted granted TxDOTs Plea to the Jurisdiction and by interlocutory Order dismissed the Plaintiff's claims against TxDOT. As the interlocutory Order was never severed it will become final once this Agreed Final Judgment is signed by the Court.

4. Therefore, this judgment is final and disposes of all claims and all parties, and is appealable.

SIGNED FOR ENTRY on ___March 9___, 2015.

JUDGE PRESIDING

**AGREED:**


*Aloysius Peter Thaddeus, Jr.*
ALOYSIUS PETER THADDEUS, JR.
Attorney for the Plaintiff
Co.

*Steve Snelson*
Steve Snelson
Attorney for Ballenger Construction

# Appendix 3

# Tex. Const. art. I § 17

Sec. 17.  TAKING, DAMAGING, OR DESTROYING PROPERTY FOR PUBLIC USE; SPECIAL PRIVILEGES AND IMMUNITIES; CONTROL OF PRIVILEGES AND FRANCHISES.  (a)  No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:

(1)  the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

(A)  the State, a political subdivision of the State, or the public at large; or

(B)  an entity granted the power of eminent domain under law; or

(2)  the elimination of urban blight on a particular parcel of property.

(b)  In this section, "public use" does not include the taking of property under Subsection (a) of this section for transfer to a private entity for the primary purpose of economic development or enhancement of tax revenues.

(c)  On or after January 1, 2010, the legislature may enact a general, local, or special law granting the power of eminent domain to an entity only on a two-thirds vote of all the members elected to each house.

(d)  When a person's property is taken under Subsection (a) of this section, except for the use of the State, compensation as described by Subsection (a) shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof.

(Amended Nov. 3, 2009.)

# Appendix 4
# Tex. R. Civ. Pro. 47

RULE 47. CLAIMS FOR RELIEF An original pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third party claim, shall contain

(a) a short statement of the cause of action sufficient to give fair notice of the claim involved;

(b) a statement that the damages sought are within the jurisdictional limits of the court;

(c) except in suits governed by the Family Code, a statement that the party seeks:
> (1) only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees; or
>
> (2) monetary relief of $100,000 or less and non-monetary relief; or
>
> (3) monetary relief over $100,000 but not more than $200,000; or
>
> (4) monetary relief over $200,000 but not more than $1,000,000; or
>
> (5) monetary relief over $1,000,000; and (d) a demand for judgment for all the other relief to which the party deems himself entitled.

Relief in the alternative or of several different types may be demanded; provided, further, that upon special exception the court shall require the pleader to amend so as to specify the maximum amount claimed. A party that fails to comply with (c) may not conduct discovery until the party's pleading is amended to comply.

# Appendix 5
# Tex. R. Civ. Pro. 85

RULE 85. ORIGINAL ANSWER; CONTENTS The original answer may consist of motions to transfer venue, pleas to the jurisdiction, in abatement, or any other dilatory pleas; of special exceptions, of general denial, and any defense by way of avoidance or estoppel, and it may present a cross-action, which to that extent will place defendant in the attitude of a plaintiff. Matters in avoidance and estoppel may be stated together, or in several special pleas, each presenting a distinct defense, and numbered so as to admit of separate issues to be formed on them.

# Appendix 6

## CAUSE NO. 11-04-15888-CV

| | | |
|---|---|---|
| HETUL BHAKTA d/b/a BUDGET INN, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | 79th JUDICIAL DISTRICT |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| TRANSPORTATION AND | § | |
| BALLENGER CONSTRUCTION | § | |
| COMPANY, INC. | | |
| | § | |
| *Defendant.* | § | BROOKS COUNTY, TEXAS |

## RESPONSE TO PLEA TO THE JURISDICTION

TO THE COURT:

COMES NOW Hetul Bhakta D/B/A Budget Inn and files this response to the Texas Department of Transportation's Plea to the Jurisdiction.

### I. Parties

Plaintiff is Hetul Bhakta d/b/a Budget Inn. Defendants are the Texas Department of Transportation and Ballenger Construction Co.

### II.    Introduction

This case arises out of Defendant Texas Department of Transportation's (TXDOT) intentional plan to upgrade U. S. Highway 281 through Falfurrias, Texas. Plaintiff owns the Budget Inn Motel located in north Falfurrias on the west side of the U.S. Highway 281 roadway. Plaintiff has filed suit for inverse condemnation, negligence and nuisance because his property has been flooded three times over the last three years during the construction and will likely flood again because of TXDOT's intentional reconfiguring of the storm water control system to conform with the new upgraded design of U.S. Highway 281. TXDOT has filed a plea to the

jurisdiction alleging that it is protected by sovereign immunity and that this Court lacks jurisdiction to hear any the Plaintiff's claims.

### III. Factual Background

In 2009 the Texas Department of Transportation (TXDOT) began construction on 6.196 miles of U.S. Highway 281 in Falfurrias, Brooks County, Texas. In April and May of 2010 and again in June of 2012, dramatically increased storm water runoff changes to the storm water and waste water control system brought about by the intentional upgrading of U.S. Highway 281 and the accompanying infrastructure changes. On the three occasions, excessive storm water runoff was directed to Plaintiff's property inundating Plaintiff's property making it unusable as a motel for long periods of time. See **Exhibit "1"** Photograph of flooding. See also **Exhibit "4"** Excerpts from Deposition of Danny Bhakta. The design changes made by the TXDOT and implemented Ballenger Construction dramatically increased the flood water runoff to Plaintiffs motel property three times and each time the Plaintiff was totally excluded from using his own property. Further, the permanent changes to the storm water control system will result in continuous flooding of Plaintiff's property essentially rendering it unusable to the Plaintiff resulting in a taking of the property by the State as part of the highway project. Plaintiff brought suit against the Texas Department of Transportation (TXDOT) and Ballenger Construction for damages to his motel property in Falfurrias, Texas which resulted from the design changes in the storm water control system.

According to sworn testimony by TXDOT's engineer, the flooding of Plaintiff's motel property was caused by intentional disconnects in the existing storm water control system that were required by TXDOT as part of the intentional upgrading of the U.S. Highway 281. See **Exhibit "2"**, Excerpts from Deposition from Oscar Cancino, TXDOT Engineer.

## IV. The Pleadings

By his Third Amended Petition, Plaintiff has alleged that TXDOT embarked on the project to upgrade over six miles of U.S. Highway 281 in Falfurrias, Texas. TXDOT designed the construction project and contracted with Ballenger Construction to perform the work which included reconfiguring the storm and waste water control systems to accommodate the new interstate quality roadway. See Exhibit 3, Plaintiff's Third Amended Petition.

Plaintiff seeks inverse condemnation of his motel property because the repetitive flooding has denied him use of the property without compensation and will continue to deprive him of the use of his property during heavy rain events. Plaintiff has not paid any money by the state for the repeated taking of the property for public use.

Plaintiff has alleged that TXDOT intentionally undertook the project to upgrade U.S.Highway 281 to interstate highway grade. To construct the upgrade it was necessary for TXDOT to redesign and reroute the existing storm and waste water drainage system. By his Third Amended Petition, Plaintiff has alleged as follows:

6. Using plans designed by its employees or agents, TxDOT entered into a contract with Ballenger Construction intending to upgrade U. S. Highway 281 in Falfurrias, Texas to interstate highway standards. A necessary part of the TxDOT plans required TxDOT to change and alter the storm and waste water control system that existed along the entire length of the roadway through Falfurrias Texas. This included the area where Plaintiff's property is located. TxDOT knew that unless a proper storm and waste control system were in place Plaintiff's property would be flooded. TxDOT intentionally performed certain acts in the design of the flood control systems for the roadway that resulted in a "taking" of the Plaintiff's property for use as a public roadway. This damage occurred on or about April 16, 2010, May 25, 2010 and again in 2012. This repeated damage has resulted in the permanent taking of Plaintiff's property.

7. During the implementation of the TxDOT redesign and reconstruction of the storm and waste water control systems Ballenger Construction Company, the agent or the employee or contractor of the Texas Department of Transportation using motor driver equipment disconnected the old storm and waste water control system which altered the storm and waste water drainage to the extent it was no longer working in many places along the Highway 281

project in Falfurrias. In doing so, motor driven equipment was used to alter the surface drainage. Ballenger Construction Company changed the grade, drainage, and/or soil at or near the Plaintiff's hotel. While TxDOT intended for Ballenger to make the alterations they were done in such a way that the system no longer protected Plaintiff's property when heavy rains fell in the Falfurrias area. Ballenger knew or should have known that its failure to protect adjacent properties from the likely flooding conditions caused by disconnect of the existing storm and waste water drainage system would damage Plaintiff's properties. The failure of Ballenger Construction to protect Plaintiff's property from flood waters has caused property damage to the building located at 1033 N. U.S. Hwy 281, Falfurrias, Texas 78355.

8.     TxDOT's intentional plan for the storm and waste water control for the Highway 281 project increased storm water runoff that "detrimentally impacted" Plaintiff who was downstream of these activities. Such actions by the Defendants have resulted in multiple incidents of total temporary restricted access to Plaintiff's property without compensation and have culminated in a permanent taking of Plaintiff's property. Alternatively, the governmental Defendant caused a non-negligent and unreasonable interference with the use and enjoyment of their property that resulted in nuisance damages.

12.     The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. 1 § 17; Here, TxDOT's intentional acts physically damaged the Plaintiff's private property for the purpose of conferring a public benefit, and TxDOT either (1) knows that its act would cause identifiable harm, or (2) knew that the specific property damage was substantially certain to result from the construction methods utilized by Ballenger Construction on the nearby construction project. Such conduct resulted in repeated total temporary loss of access and use of the Plaintiff's property without fair and reasonable compensation that it is likely to reoccur. The repetitive loss has resulted in the permanent taking without compensation of the Plaintiff's property as a result of Defendants conduct.

The re-routing of the storm water control system was part of the TXDOT upgrading of the highway to the interstate quality for the public good. TXDOT knew or should have known that property owners adjacent to the roadway would be affected by the changes in the storm water control system.

## VI. Argument and Authorities

To establish his claim for inverse condemnation, Plaintiff has to plead there was a taking. Plaintiff has plead that his property was taken by the flooding caused by the changes in the storm water system required by TXDOT. It is not disputed that Ballenger Construction, TXDOT's agent disconnected various parts of the storm water control system during the reconfiguration of the storm water control system and the roadway as part TXDOT intentional plan to upgrade U.S. Highway 281.

TxDOT's intentional reconfiguration of the storm and waste water system control for the Highway 281 project increased storm water runoff that "detrimentally impacted" Plaintiff who is downstream of these activities. Such actions by the Defendants have resulted in multiple incidents of total temporary restricted access to Plaintiff's property without compensation and have culminated in a permanent taking of Plaintiff's property. Alternatively, the governmental Defendant caused a non-negligent and unreasonable interference with the use and enjoyment of their property that resulted in nuisance damages.

The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." **Tex. Const. art. I § 17**; Here, TXDOT's intentional acts physically damaged the Plaintiff's private property for the purpose of conferring a public benefit.

The elements of a constitutional taking are (1) the State intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in a "taking" of property (3) for public use. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *City of Abilene v. Smithwick*, 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.).

When deciding whether to grant a plea to the jurisdiction, the trial Court must look solely to the allegations in the petition *Kerr vs. TXDOT*, 45 S.W.3d 249, 250 (Tex. App. Houston [1 Dist] 2001). The allegations contained in Plaintiff's Third Amended Petition meet the Texas Constitutional requirements by alleging that TXDOT intended to make improvements and upgrades to the U.S. Highway 281 roadway for the benefit of the public. Plaintiff also alleges that he has not received compensation from the state of Texas for the taking of his property on three occasions where storm water from the roadway flooded his property.

In support of the plea to the jurisdiction TxDOT presumes that the April and May 2010 flooding incidents are so close together that *TXDOT* considers the two 2010 events as one flooding event and ignores the fact that another flooding incident took place in June 2012. This is a subject conclusion by TXDOT which is not supported by the evidence. There has been no evidence that TXDOT has done anything to re-direct storm water away from Plaintiff's property and prevent future flooding of the Plaintiff's property between the April and May 2010 incidents or between the 2010 and the June 2012 flooding incidents. All three incidents shut down Plaintiff's motel for the duration of the time it took to make whatever repairs Plaintiff could accomplish.

In *Kopplow Dev. Inc. vs. City of San Antonio*, 399 S.W.3d 532, (Tex. 2013), the Supreme Court held that recurrence [of flooding] is a probative factor. Plaintiff has alleged three incidents of flooding directly related to the road construction of U.S. 281 by TXDOT and its contractor. The Supreme Court has also held that "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Regional Water District v. Gragg*, 151 S.W.3d 546, 555 (Tex.2004). With flood water impacts, recurrence is a probative factor in assessing intent and the extent of

the taking. *Gragg* at p. 555. With three separate flooding the Plaintiff's property, TXDOT cannot ignore that the flooding caused by the specific act of disconnecting and reconfiguring the storm water control system deprived the Plaintiff of his property and will likely do so again in the future.

## V. Nuisance

To establish TXDOT liability for nuisance claim Plaintiff must show that there has been a takings claim under Article I, Section 17, of the Texas Constitution. Plaintiff must plead that TXDOT intentionally performed certain acts that resulted in a taking of property for public use. TXDOT's intent must be examined at the time it made its decision to construct the U.S. Highway 281 upgrade. Intent can be inferred by the recurrent nature of the flooding. *Gragg* at p. 555. In the testimony of the TXDOT's Engineer, it is clear that part and parcel of the highway upgrade was a reconfiguration of the storm water control system. The evidence is that the old system was disconnected prior to the rainstorm. See **Exhibit "2"**, Excerpts from Deposition from Oscar Cancino. Plaintiff has properly alleged a constructional taking of his property without compensation as of the three flooding events.

Plaintiff has alleged that the Defendants have acted intentionally and/or unreasonably in their interference with the flow of surface waters such that their conduct constitutes the legal cause of an invasion of Plaintiff's interest in the private use and enjoyment of his property. Three flooding instances over a two year period constitute an intentional taking of the Plaintiff's property by the State of Texas. The Supreme Court has held that the intent standard for physical damage to private property means that liability may apply if an entity "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain. *Kopplow* at pp 537-538. *Gragg* at p. 555. TXDOT cannot logically, or reasonably,

argue that when it undertook to reconfigure the storm water control system that it did not intend to alter the flow of storm water to accommodate the new roadway.

Plaintiff would show that he has properly pleaded a takings claim as part of his allegations that the Defendant's created nuisance which damaged his property:

### "I. Count 4 - Nuisance

Defendant TxDOT and Ballenger Construction Company's interference with the flow of surface waters constitutes an invasion of Plaintiff's interest in the use and enjoyment of land and constitutes a Nuisance. The Defendants have acted intentionally and/or unreasonably in their interference with the flow of surface waters such that their conduct constitutes the legal cause of an invasion of Plaintiff's interest in the private use and enjoyment of his property." See **Exhibit "3"**, Plaintiff's Third Amended Petition.

### VI. Negligence In The Operation of A Motorized Driven Equipment

TxDOT certainly did not intend the 6.196 miles of road construction work on U.S. Highway 281 to be done by hand ~~by hand~~. Doubtless motorized equipment in the form of motorized ditch digger, back hoes, motor graders and similar road building equipment was involved in the road construction and particularly in the reconfiguring of the Storm water control system. See **Exhibit 5**, Photograph of road work using motor driven equipment. It is therefore not a large leap to the conclusion that TxDOT or its agents (Ballenger Construction), utilized motor driven equipment to make carrier the intent of TxDOT to reconfiguring

As a governmental entity, TxDOT is a governmental unit whose employee was performing a governmental function for which immunity was waived; The TxDOT employee(s), while acting within the scope of employment, was/were negligent. The Plaintiff's injury arose

from the operation or use of a motor-driven vehicle or motor-driven equipment by Ballenger used to disconnect the existing storm water and waste control system with creating any safeguards to prevent flooding of Plaintiff's property. Ballenger, either acted at the direction of TxDOT, or alternatively Ballenger acted in a negligent manner and would have been personally liable to the Plaintiff under Texas law for its conduct in proximately causing damage to the Plaintiff's property.

WHEREFORE, Plaintiff prays that upon hearing the court deny TxDot's Plea to the jurisdiction and for such other and further relief at law or in equity to which plaintiff may be entitled.

Respectfully submitted,
V. GONZALEZ & ASSOCIATES, P.C.
121 N. 10th St.
McAllen, Texas 78504
Telephone: (956) 630-3266
Facsimile: (956) 630-0383

ALOYSIUS PETER THADDEUS, JR.
State Bar No. 19819500
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on counsel of record in accordance with Texas Rules of Civil Procedure on this the 18th day of October, 2013 as indicated below:

*Via Facsimile: (214) 363-9979*
Steve Snelson
Attorney at Law
Gerstle, Minissale & Snelson, LLP
5005 Greenville Avenue, Suite 200
Dallas, TX 75206
Attorney for Ballenger Construction Company, Inc.

*Via Facsimile: (512) 472-3855*
Betsy J. Johnson
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548

**ALOYSIUS PETER THADDEUS, JR.**

EXHIBIT "1"



# EXHIBIT "2"

1.

CAUSE NO. 11-04-15888-CV

| | | |
|---|---|---|
| HETUL BHAKTA D/B/A BUDGET INN | * | IN THE DISTRICT COURT |
| | * | |
| | * | |
| Plaintiff(s) | * | |
| | * | |
| VS. | * | 79TH JUDICIAL DISTRICT |
| | * | |
| TEXAS DEPARTMENT OF TRANSPORTATION AND BALLENGER CONSTRUCTION COMPANY, INC. | * | |
| | * | |
| | * | |
| | * | |
| Defendant(s) | * | BROOKS COUNTY, TEXAS |

*********************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

OSCAR CANCINO

APRIL 10, 2012

*********************************************************

ORAL AND VIDEOTAPED DEPOSITION OF OSCAR CANCINO, produced as a witness at the instance of the Plaintiff(s), and duly sworn, was taken in the above-styled and numbered cause on April 10, 2012, from 10:42 a.m. to 2:10 p.m., before MARICELA FLORES, CSR in and for the State of Texas, reported by machine shorthand, in the conference room of Texas Department of Transportation, 1350 Business Highway 77, San Benito, Cameron County, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereof.

4

VIDEOGRAPHER: Time is 10:42 a.m., April 10th, year 2012. We are recording.

OSCAR CANCINO,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. CASTRO:

Q       Sir, would you please state your name for the record?

A       My name is Oscar Cancino.

Q       Mr. Cancino, my name is Fred Castro, and I represent the plaintiff in this lawsuit. I represent the Budget Inn. And I understand that you work for the Texas Department of Transportation; is that correct?

A       Yes.

Q       Okay. What is your title?

A       Project manager.

Q       Okay. And let me just run through some of the standard deposition stuff. Have you ever given one before?

A       Yes.

Q       Okay. How many?

A       Can't recall. A few.

Q       Okay. More than five?

A       No more than five.

Q       Okay. Just as a review, what we're looking

A    Experience, education, and licensing, of course.

Q    Okay.  Let's start with experience.  Tell me about it.  What kind of experience do you have, sir?

A    I have over ten years' experience in the transportation and other civil related work.

Q    Okay.  And as far as your education, sir, could you give me a brief history of your education?

A    I hold a bachelor's of science in mechanical engineering.

Q    Okay.  And what's your -- is that just an undergraduate degree?

A    Yes.

Q    Okay.  Any -- anything in --

A    Post?

Q    Postgraduate?

A    No.

Q    Okay.  With respect to your licensings, what are you licensed as in the state of Texas?

A    As a professional engineer.

Q    Okay.  And what discipline?

A    It was within civil transportation.

Q    Okay.  So what I've gathered is, you have over ten years of experience in your given profession.  Your given profession is civil engineering.  You are

10

to bring me, using a fancy Latin term called "subpoena duces tecum," which might really mean bring it to me. Have you looked through this?

A    Yes.  I did read it.

Q    Okay.  And have you satisfied yourself that you've brought all materials that are located in your office to this deposition today?

A    Of which are in my possession, yes.

Q    Okay.  So let me just clarify that.  There may be other responsive documents kept by the Texas Department -- Department of Transportation; however, the documents that are in your control are present here with you today?

A    Yes.

Q    Okay.

A    Exactly.

Q    Okay.  Let's go back to your position, sir. So as a project manager, what were your duties in respect to this particular project?

A    At that time?

Q    Yes, sir.

A    My responsibilities were to develop the project up to and letting and follow through with some of the commitments that we had made at that time.

Q    Tell me what "and letting" is.

A       Letting is when we take the project to bid for construction.

Q       Okay.  And so while construction was going on, what were your responsibilities?

A       To follow through with some of the things we had made commitments in for the project.

Q       Give me some examples of commitments.

A       Utility coordination, for example.

Q       Okay.  I would imagine that all these projects have utility coordination projects or problems; is that correct?

A       Yes.

Q       Okay.  Did you find that happen in this particular instance and on this project?

                MS. JOHNSON:  Objection.  Form.

                MR. CASTRO:  Basis?

                MS. JOHNSON:  Are you referring -- it's -- it's unclear.  I'd say it's a vague question.

                MR. CASTRO:  Okay.  I'll restate it.

Q       In regards to the Highway 281 project in Falfurrias, Texas, did you find that there were your typical utility coordination issues?

A       Your -- I would -- I would say that we did have typical accommodation relocation issues, yes.

Q       Uh-huh, uh-huh.  Tell me what's involved in

that, sir, in coordinating with the utilities.

A     First and foremost is identifying the conflict, which is inventorying the utilities.  And then that sets the basis for your coordination.

Q     What I'm imagining, sir -- and correct me if I'm wrong -- but basically, you find out where everything is and where you've got to move it to make room for the road work that's going on?

A     Yes.

Q     Okay.  Is that too simple?

A     No.  That's exactly what it is.

Q     Okay.

A     Easier said than done, though.

Q     I bet.  Okay.

MR. CASTRO:  Let's -- let's go off the record for one second.

VIDEOGRAPHER:  Time is 10:52 a.m.  We're off the record.

(OFF THE RECORD.)

VIDEOGRAPHER:  Time is 10:59 a.m.  We are recording.

Q     Okay.  So while we were on break, we looked through the documents here to try and identify some useful schematics or maps.  Were we able to do so?

A     Yes.

misstates his testimony.

Q    Okay.  Strike it.  Let's come up with a standard term for this intersection.  What did you call it earlier?

A    It is the Business 281 and U. S. 281 junction.

Q    Okay.  Let's call that "the junction."  All right?  So at the junction --

A    Yes.

Q    -- just before the RFI, the contractor had been placing storm sewers in that area; true?

A    Yes.

Q    Okay.  And we've just talked about how a project gets run.  So I think it follows suit that the contractor's responsible for the work that's done in that area?

A    Yes.

Q    Okay.  You had also mentioned that TxDOT has some responsibilities there also?

A    Yes.

Q    Describe that for me.

A    That would be that the contractor follow the plan specifications and estimate, which in this case, you know, is what we're looking at here, which is part of the plans, the utility drawings and the drainage drawings.

Q      Okay.

A      That they're following in sequence.

Q      If I wanted to find out how to correctly install this particular section of storm sewers, where would I look?

A      It would be a combination of documents.

Q      I love documents.  Tell me about them.  As best as you can, sir.  I know you're on the spot.

A      It would be the plans to begin with.

Q      Sure.

A      The utility drawings.  The general notes. The proposal.

Q      Okay.

A      And the -- of course, our specification book.

Q      Okay.  Is it safe to say that that's a list of sources to go to to tell you how to do it right?

A      Yes.

Q      Okay.  Do you believe that the work in that junction deviated from the plans and specs?

A      Could you rephrase the question?

Q      Sure.

A      Please.

Q      Okay.  Do you believe that the work done by the contractor at the junction in some way did not follow

25

the plans and specs?

A    I do believe so.

Q    Okay.  In what ways didn't it follow?

A    With the -- with the maintenance of drainage.

Q    Let's define "drainage."  Can you give me a layman's interpretation of what drainage is?

A    It's the conveyance or collection of discharge, of rainfall.

Q    Is that related to sanitary sewer systems?  Or no?

A    It's similar in the collection aspect.  You're conveying it somewhere for an outfall or for a discharge point.

Q    But the water in the sewer doesn't go to the same place as the rainwater, right?

A    Not necessarily.

Q    Okay.  In the junction, the problems that you have identified, did they relate solely to drainage?  Or were they also related to sanitary sewer construction?

MS. HUSTON:  Objection.  Form.

MR. CASTRO:  Basis, please?

MS. HUSTON:  I don't believe he's identified specific problems.

MR. CASTRO:  Okay.  I'll strike the

question.

Q   We know that there's a problem in this area. Are the problems in that -- in the area of the junction, are they related solely to drainage?  Or is sanitary sewers also involved?

A   Sanitary sewer would be involved, yes.

Q   Okay.  Any other aspects of the construction that would have contributed to the problems we're beginning to describe at the junction?

A   Not sure I understand that question.

Q   Well, I'm not an engineer, so I'm trying to approach this from a layman's terms.  And so when I think of drainage, I think of pipes.  And I think of site work. I'm much more used to building schools and things like that.

What I'm trying to do is narrow down the fields of things that we need to consider.  And so now we know that we need to consider general rainwater drainage as well as sanitary sewers.  Are there any other scopes or scopes of work or other types of work that would have contributed to the problem in that junction area?

A   I would -- I would say the remaining construction activities at that time.

Q   Okay.  So what still needed to be done?

A   Yes, exactly.

27

Q    Okay.  I just want to flush that out a little bit.  So it's -- part of the problem is the work wasn't fully executed?

A    Yes.

Q    Okay.  Even though the work wasn't fully executed, do you believe that the contractor still has a certain level of responsibility to ensure that the surrounding properties are still protected, even though the work isn't complete?

A    Yes.

Q    Okay.  Does that responsibility derive from contract?

A    Yes.

Q    Okay.  Do you think that's something they would do anyways?

A    One would think.

Q    Okay.  And certainly you would hope?

A    Certainly.

Q    Let's get into the specific problems.  What can you identify for me at the junction that caused or contributed to inappropriate drainage situations?

A    Insufficient connectivity of either existing or proposed drainage system.

Q    Okay.  Using --

MR. CASTRO:  Let's go off the record for

A       Yes.    Sheet 10 of 13.

            MS. HUSTON:  Okay.   Thank you.

            MR. CASTRO:  Okay.

            MS. JOHNSON:  And also for the record, what was the label that you put on?

A       "TCP Issue."

Q       Okay.  And so continue, sir.

A       The question again, please?

Q       Just sort of tell us how things happened and why we need to look at these different marks on the -- on the layout.

A       This first mark, of course, the one I've labeled "TCP Issue" -- and the second is the subject property.

Q       Okay.  Can you label the subject property, please?

A       Yes.

Q       Have you done that, sir?

A       Yes.

Q       And what is the name?

A       "Subject Property."

Q       Okay.  Feel free to continue, sir.

A       This first marking or the call-out for the TCP issue, the reason I've identified it and mentioned it with relation to the subject property is because the

contractor at that point was doing work along the east side there, which is for the proposed storm sewer, which is identified in orange through the layout.

Q      Okay.  So --

MR. CASTRO:  Could you read back his last answer?  Just the very beginning.

(REQUESTED PORTION READ BACK.)

Q      Okay.  So at that -- you mentioned at that point.  Where are we in that point of time?  Is that -- does that correspond to the e-mail?  Right around that time frame of March 4th, 2010?

A      No.  It's months later.

Q      Okay.  What time frame are you talking about there?

A      This is May, June time frame.

Q      Okay.  Is it possible that the -- that part of April, those conditions existed?

A      Yes.

Q      Okay.  Do you recall when the first incidence of flooding at the Budget Inn was?

A      I can't recall.

Q      Okay.  Is there anything in your notes here that might assist us?

A      The subpoena makes reference to two dates --

Q      Okay.

A       -- of events.

Q       And do you think -- do you have any reason to disagree with the information contained within that subpoena?

A       No.

Q       Okay.  Do you believe it to be accurate and true to the best of your knowledge?

A       Yes.

Q       Okay.  And so let's identify that information.  Looking at the subpoena, I see the dates of April 16th, 2010 and May 25th, 2010.

A       Yes.

Q       Okay.  And those are the two dates that we've identified when the Budget Inn flooded?

A       Yes.

Q       Okay.  Now let's go back to the document we're discussing.  How did the water get to the Budget Inn?  And I guess -- let me -- let me qualify that.  I'd like to start at the beginning, to the extent that we can, and just sort of work through the problems individually. I don't know the best way to do that, so I'm going to let it be up to you and just simply ask:  What started the problem?

        MS. JOHNSON:  Objection.  It's a little vague.

Q     What started the problem that flooded the Budget Inn?

MS. JOHNSON:  That's still a little vague.  But you can answer.

Q     But you may answer.

A     The problem that we observed was, with the proposed storm sewer that was being placed, there was some disconnects within that system.

Q     Okay.  First define what a "disconnect" is.

A     Not a -- a consistent or continuous --

Q     Okay.

A     -- system that would discharge runoff.

Q     Okay.  Can you describe the locations -- strike that.  So the locations of disconnects, is that what you have drawn some of the pipes and other markings on the map for?

A     No.

Q     Okay.  Tell me about the markings on the map.

A     The markings relate, again, to the area that I've identified for the purposes of the discussion, but how they relate to the areas that we found being a problem with the storm sewer.

Q     Okay.  Why don't you show me where the first disconnect or the first problem occurred.  Is that an

inaccurate way of describing it?

A     No.  It's just I don't recollect exactly where they were.

Q     Okay.  Why don't you show me the biggest problem first then.

A     The biggest problem would have been across these cross streets.  There wasn't at that time what we observed as a connection between those as identified, 14th Street and County Road 203.

Q     What was supposed to happen that didn't happen in those two locations?

A     With the installation of the proposed storm sewer, one is to begin -- or the contractor is to begin at the outfall point and continuously lay down pipe in that manner and maintain drainage, which is connecting to your existing structures or pipes or place the proposed in place.

Q     Okay.  How many different connections were missed in that manner?

A     From our observation or my observation, there was two that I observed.

Q     Can you draw those two on the map -- hold on one second.  Let me borrow this highlighter, please. Using the highlighter, can you put the locations where they did not connect?

Q      Okay.  At this point in this project, had it been completely removed or completely abandoned?

A      Partially.  Some sections of that.

Q      So it was in the middle of the process, correct?

A      Yes.

Q      Okay.

A      Yes.

Q      Were there some portions of that existing sanitary -- strike that.  Were there some portions of that existing -- let's go back.  What's the name of the system we're talking about again?  It's a storm --

A      It's a storm sewer.

Q      Storm sewer.  What part of the existing storm sewers were removed from service at or near the time of the flooding?

A      I wouldn't be able to identify that.

Q      Okay.

A      I don't recall.

Q      But do you know if that condition had existed?

A      Yes.

Q      Okay.  So some portions of the abandonment of the existing storm drainage system contributed to the water problems that we were having at the juncture?

38

A      Yes.

Q      Okay.  So we've got a combination of two things.  We've got a half abandoned system and a half completed system.  Is that accurate?

A      Yes.

Q      Okay.  Those two things contributed to the damages caused at the Budget Inn; true?

A      Not in its entirety.

Q      Okay.  What am I leaving out?

A      The severity of the storm.

Q      Okay.  Tell me about the storm.

A      It was significant to where we received -- just noticed that there was quite a bit of flooding along the project in different areas.  And it was brought up to our -- our attention at the district office.

Q      When did that happen?

A      On or about the time, you know.  Within April, you know, May time frame.

Q      Okay.  To the best of your ability, can you explain to me how the water was diverted towards the Budget Inn?

A      Most likely sheet flow was directed off the construction and the existing roadway in that direction due to, again, disconnects in the system and in addition to the rainfall.

104

CAUSE NO. 11-04-15888-CV

HETUL BHAKTA D/B/A BUDGET     *      IN THE DISTRICT COURT
INN                          *
                             *
        Plaintiff(s)         *
                             *
VS.                          *      79TH JUDICIAL DISTRICT
                             *
TEXAS DEPARTMENT OF          *
TRANSPORTATION AND           *
BALLENGER CONSTRUCTION       *
COMPANY, INC.                *
                             *
        Defendant(s)         *      BROOKS COUNTY, TEXAS

REPORTER'S CERTIFICATION

DEPOSITION OF OSCAR CANCINO

APRIL 10, 2012

        I, MARICELA FLORES, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

        That the witness, OSCAR CANCINO, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

        That the deposition transcript was submitted on _____, 2012 to the witness or to the attorney for the witness for examination, signature, and to be returned to U. S. LEGAL SUPPORT, INC. by _____, 2012;

        That the amount of time used by each party at the deposition is as follows:

        MR. FREDERICK J. CASTRO - 2 hours and 13 minutes

MS. MARGERY HUSTON - 4 minutes

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes all parties of record:

MR. FREDERICK J. CASTRO, Counsel for Plaintiff(s)

MS. MARGERY HUSTON AND MS. BETSY JOHNSON, Counsel for Defendant(s)

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this _____ day of _____, 2012.

MARICELA FLORES, CSR
Certified Shorthand Reporter
Certificate No. 2558
Certification Expires 12/31/10
for
U. S. Legal Support, Inc.
Firm Registration No. 342
802 North Carancahua
Suite 2280
Corpus Christi, Texas 78401
Telephone (361) 883-1716

EXHIBIT "3"

| | | |
|---|---|---|
| HETUL BHAKTA d/b/a BUDGET INN, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | 79th JUDICIAL DISTRICT |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| TRANSPORTATION AND | § | |
| BALLENGER CONSTRUCTION | § | |
| COMPANY, INC. | | |
| | § | |
| Defendant. | § | BROOKS COUNTY, TEXAS |

## PLAINTIFF'S THIRD AMENDED ORIGINAL PETITION, REQUEST FOR EQUITABLE RELIEF & REQUEST FOR DISCLOSURE

TO THE COURT:

COMES NOW HETUL BHAKTA D/B/A BUDGET INN and files his Third Amended Original Petition and Request for Equitable Relief and would show the Court as follows:

### A. Discovery-Control Plan

1. Plaintiff intends to conduct discovery under Level 3 of the Texas Rule of Civil Procedure.

### B. Parties

2. Plaintiff, Hetul Bhakta, is an individual doing business as Budget Inn. Budget Inn is located at 1033 N. U.S. Hwy 281, Falfurrias, Texas 78355.

3. Defendant, the State of Texas, may be served with process via the Texas Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079. This Defendant has appeared and answered herein.

4. Defendant Ballenger Construction Company, a Texas corporation, may be served with process via its registered agent on file with the Secretary of State, Joseph C. Ballenger, 24200 N. FM 509, Harlingen, TX 78550. This Defendant has appeared and answered herein.

## C. Jurisdiction

4. This is a claim brought under the Texas Tort Claims Act (TTCA), Texas Civil Practice & Remedies Code, Chapter 101. Additionally Plaintiff claims that actions of the State of Texas resulted in repeated incidents of total temporary taking of Plaintiff's property without compensation. The Court has jurisdiction over this claim because the TTCA waives Texas' sovereign/governmental immunity for claims involving property damage caused by the negligent operation of or use of motor-driven equipment by the Defendant's employee, if that employee would be personally liable to the Plaintiff under Texas law. Tex. Civ. Prac. & Rem. Code Sec. 101.021(1). This claim as set forth more fully in Count 1 involves property damage caused by motor-driven equipment.

5. The Court has jurisdiction over Ballenger Construction Company, Inc., as the actions of this Defendant caused damage to real property. That real property is located in Falfurrias, Brooks County, Texas at 1033 N. U.S. Hwy 281, Falfurrias, Texas 78355.

## D. Venue

5. This suit involves damage to real property located in Falfurrias, Brooks County, Texas at 1033 N. U.S. Hwy 281, Falfurrias, Texas 78355. Suit is being brought in Brooks County, Texas.

## E. Facts

6. Using plans designed by its employees or agents, TxDOT entered into a contract with Ballenger Construction intending to upgrade U. S. Highway 281 in Falfurrias, Texas to interstate

highway standards. A necessary part of the TxDOT plans required TxDOT to change and alter the storm and waste water control system that existed along the entire length of the roadway through Falfurrias Texas. This included the area where Plaintiff's property is located. TxDOT knew that unless a proper storm and waste control system were in place Plaintiff's property would be flooded. TxDOT intentionally performed certain acts in the design of the flood control systems for the roadway that resulted in a "taking" of the Plaintiff's property for use as a public roadway. This damage occurred on or about April 16, 2010, May 25, 2010 and again in 2012. This repeated damage has resulted in the permanent taking of Plaintiff's property

7. During the implementation of the TxDOT redesign and reconstruction of the storm and waste water control systems Ballenger Construction Company, the agent or the employee or contractor of the Texas Department of Transportation using motor driver equipment disconnected the old storm and waste water control system which altered the storm and waste water drainage to the extent it was no longer working in many places along the Highway 281 project in Falfurrias. In doing so, motor driven equipment was used to alter the surface drainage. Ballenger Construction Company changed the grade, drainage, and/or soil at or near the Plaintiff's hotel. While TxDOT intended for Ballenger to make the alterations they were done in such a way that the system no longer protected Plaintiff's property when heavy rains fell in the Falfurrias area. Ballenger knew or should have known that its failure to protect adjacent properties from the likely flooding conditions caused by disconnect of the existing storm and waste water drainage system would damage Plaintiff's properties. The failure of Ballenger Construction to protect Plaintiff's property from flood waters has caused property damage to the building located at 1033 N. U.S. Hwy 281, Falfurrias, Texas 78355.

8. TxDOT's intentional plan for the storm and waste water control for the Highway 281 project increased storm water runoff that "detrimentally impacted" Plaintiff who was downstream of these activities. Such actions by the Defendants have resulted in multiple incidents of total temporary restricted access to Plaintiff's property without compensation and have culminated in a permanent taking of Plaintiff's property. Alternatively, the governmental Defendant caused a non-negligent and unreasonable interference with the use and enjoyment of their property that resulted in nuisance damages.

9. The Defendants repeated tortious actions jointly and severally have resulted in the temporary and total loss and caused substantial impact on Plaintiff's access and use of his property. The repeated flood events constitute a total temporary loss of access to Plaintiff's property with compensation

### F. Count 1 – Negligence in Operation of Motor Driven Equipment

8. The Defendant, TxDOT is a governmental unit whose employee was performing a governmental function for which immunity was waived; The TxDOT employee(s), while acting within the scope of employment, was/were negligent. The Plaintiff's injury arose from the operation or use of a motor-driven vehicle or motor-driven equipment by Ballenger used to disconnect the existing storm water and waste control system with creating any safeguards to prevent flooding of Plaintiff's property. Ballenger, either acted at the direction of TxDOT, or alternatively Ballenger acted in a negligent manner and would have been personally liable to the Plaintiff under Texas law for its conduct in proximately causing damage to the Plaintiff's property.

9. Plaintiff seeks unliquidated damages in the amount within the jurisdictional limits of this Court.

## G. Count 2 – Negligence

10.     Defendant Ballenger Construction Company owed a legal duty to the Plaintiff to perform its work in such a manner that Plaintiff's property would not be damaged as a result of Defendant's work. Defendant Ballenger Construction breached that duty in failing to adhere to the appropriate standard of care, and that breach proximately caused damages to Plaintiff's property.

11.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## H. Count 3 – Taking/Inverse Condemnation

12.     The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. 1 § 17; Here, TxDOT's intentional acts physically damaged the Plaintiff's private property for the purpose of conferring a public benefit, and TxDOT either (1) knows that its act would cause identifiable harm, or (2) knew that the specific property damage was substantially certain to result from the construction methods utilized by Ballenger Construction on the nearby construction project. Such conduct resulted in repeated total temporary loss of access and use of the Plaintiff's property without fair and reasonable compensation that it is likely to reoccur. The repetitive loss has resulted in the permanent taking without compensation of the Plaintiff's property as a result of Defendants conduct.

13.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## I. Count 4 - Nuisance

14.     Defendant TxDOT and Ballenger Construction Company's interference with the flow of surface waters constitutes an invasion of Plaintiff's interest in the use and enjoyment of land and

constitutes a Nuisance. The Defendants have acted intentionally and/or unreasonably in their interference with the flow of surface waters such that their conduct constitutes the legal cause of an invasion of Plaintiff's interest in the private use and enjoyment of his property. It is further alleged that BALLENGER and TxDOT were aware that the flood damage and the total temporary taking that resulted from their actions would result or was substantially certain to result from their conduct.

15. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## J. Jury Demand

16. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## K. Conditions Precedent

15. All conditions precedent to Plaintiff's claim for relief have been performed or have occurred. Specifically Notice under Tex 101.101 has been given which reasonably describes the damage or injury claimed; the time and place of the incident; and the incident in question, and/or TxDOT had actual notice that Plaintiff's property has been damaged. Defendant TxDOT in fact had actual notice and upon information and belief inspected the damage, and responded in writing to this notice.

## L. Request for Disclosure

16. Under Texas Rule of Civil Procedure 194, Plaintiff requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## M. Prayer

17. For these reasons, Plaintiff asks that the Court issue citation for Defendants to appear and answer and that Plaintiff be awarded a judgment against Defendants for the following:

a. Actual damages.

b.     Prejudgment and post judgment interest.

e.     Court costs.

f.     Attorney fees.

g.     All other relief to which Plaintiff is entitled.

Respectfully submitted,
V. GONZALEZ & ASSOCIATES, P.C.
121 N. 10th St.
McAllen, Texas 78504
Telephone: (956) 630-3266
Facsimile: (956) 630-0383


ALOYSIUS PETER THADDEUS, JR.
State Bar No. 19819500
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on counsel of record in accordance with Texas Rules of Civil Procedure on this the 14th day of October, 2013 as indicated below:

*Via Facsimile: (214) 363-9979*
Steve Snelson
Attorney at Law
Gerstle, Minissale & Snelson, LLP
5005 Greenville Avenue, Suite 200
Dallas, TX 75206
Attorney for Ballenger Construction Company, Inc.

*Via Facsimile: (512) 472-3855*
Betsy J. Johnson
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548

**ALOYSIUS PETER THADDEUS, JR.**

# EXHIBIT "4"

CAUSE NO. 11-04-15888-CV

HETUL BHAKTA D/B/A          *     IN THE DISTRICT COURT
BUDGET INN                  *
                            *
VS.                         *
                            *     79TH DISTRICT COURT
TEXAS DEPARTMENT OF         *
TRANSPORTATION AND          *
BALLENGER CONSTRUCTION      *
COMPANY, INC.               *     BROOKS COUNTY, TEXAS
****************************************************

ORAL DEPOSITION OF
DANNY BHAKTA
JULY 9TH, 2013

****************************************************

         ORAL DEPOSITION of DANNY BHAKTA, produced as a
witness at the instance of the Defendant, and duly
sworn, was taken in the above-styled and numbered cause
on the 9th day of July, 2013, between the hours of
11:00 a.m. and 1:00 p.m., before JULIE WINSTON, CSR, in
and for the State of Texas, reported by machine
shorthand, at the offices of V. Gonzalez & Associates,
121 N. 10th Street, McAllen, Texas, in accordance with
the Texas Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

4

DANNY BHAKTA,

having been duly sworn, testified to the following:

EXAMINATION

BY MR. SNELSON:

Q.   Sir, my name is Steve Snelson and I'm an attorney that represents Ballenger Construction; do you understand that?

A.   Yes.

Q.   And can you please state your full name for the record?

A.   Danny Bhakta.

Q.   So, Mr. Bhakta, have you ever given a deposition before?

A.   Yes.

Q.   Okay.  How many times?

A.   Couple of times.

Q.   When was the last time you gave a deposition?

A.   Couple of months ago.

Q.   What type of matter were you giving a deposition?

A.   Insurance.

Q.   I'm sorry?

A.   Insurance.

Q.   Insurance what?

A.   Damage.  Insurance case.

A. No, no, no.

Q. Oh, I'm sorry. Okay.

A. You're doing it...

Q. Okay. I mis- -- okay. Let me start over again. What you described for me is the buildings that you've added to the original property?

A. Yes.

Q. Correct?

A. Yes.

Q. And that's the end of the buildings that you've added to the property?

A. Yes.

Q. You have done other renovations on the property?

A. Yeah. Yes.

Q. All right. Can you describe for me what other renovations to the property you've done?

A. Well, maybe some major in 2010.

Q. All right.

A. And some in last year, 2012.

Q. And the ones in 2010, were they after the flooding event?

A. Yes.

Q. Was it after -- and I understand there was two flooding events.

21

A.    Three.

Q.    Three.  Was the major renovations in 2010 after all three flooding events?

A.    Yes.  We did some and flood again so we did again.  Flooded again.

Q.    Okay.

A.    So...

Q.    So you did some in between but the major money was spent after the final flooding?

A.    There you go.

Q.    And then you also said you did some in the last year?

A.    Yes.

Q.    And what renovations have you done in the last year?

A.    Well, new carpet and new walls.  Painting. Well, I don't remember what else was there.

Q.    All right.  And what was the reason to do the new carpet and painting?

A.    Flooding.

Q.    Okay.  Is it the same flooding back in 2010?

A.    No.  We do partially because it need more attention.  We had to open the business to start collecting money so we do partial and get going and sometimes short of money.

22

Q.   Okay.  So you couldn't complete all the work?

A.   Yeah.  No.

Q.   Okay.  So the work you did in 2012, was that repair work related to the flooding in 2010?

A.   Whatever the requirement to go, we finish it off first.

Q.   Okay.

A.   Stuff still pending there.  Not finished because of no money is not enough.

Q.   And, sir, I understand you said you didn't have enough money to complete the repairs.

A.   Yes.

Q.   I'm trying to figure out if --

A.   Yes.

Q.   Let me do it this way.  When were the three flooding events?

A.   2010 three times and two times in 2012.

Q.   Two times in 2004.

A.   No.  '12.

Q.   2012?

A.   Yes.

Q.   Okay.  So you had three times in 2010?

A.   Yes.

Q.   And two times in 2012?

A.   Yes.

112

CAUSE NO. 11-04-15888-CV

HETUL BHAKTA D/B/A          *    IN THE DISTRICT COURT
Budget Inn                 *
                           *
VS.                        *
                           *    79TH DISTRICT COURT
TEXAS DEPARTMENT OF        *
TRANSPORTATION AND         *
BALLENGER CONSTRUCTION     *
COMPANY, INC.              *    BROOKS COUNTY, TEXAS
********************************************************

REPORTER'S CERTIFICATION
DEPOSITION OF DANNY BHAKTA
JULY 9, 2013
********************************************************

I, JULIE WINSTON, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, DANNY BHAKTA, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on _7/29/13_ to the witness or to the attorney for the witness for examination, signature and return to me by _8/29/12_ ;

That the amount of time used by each party at the deposition is as follows:

PETER THADDEUS - 00 HOUR:00 MINUTE(S)
STEVE SNELSON - 01 HOUR:41 MINUTE(S)
BETSY JOHNSON - 00 HOUR:18 MINUTE(S)

